[No. 32228. Department Two. May 28, 1953.]

PAUL MADDEN, *Appellant*, v. KEN HERZOG, *Respondent*.[1]

*Karr, Tuttle & Campbell*, for appellant.

*Purvis & Sanchez*, for respondent.

FINLEY, J.—Plaintiff, Paul Madden, instituted this lawsuit designed to obtain from defendant Herzog the purchase price of a certain truck or, in the alternative, to have the court declare that Madden had a lien on the truck superior to any that might be asserted by the National Bank of Washington. On stipulation of the parties during the pendency of this appeal, the action was dismissed as to the bank.

The first question is whether the sale of the truck was to Herzog, making him Madden's debtor, or whether the sale was to Simmons Motors, of Bremerton, Washington (now bankrupt), making the bankrupt firm Madden's debtor. The second closely related question is whether title to the truck was reserved in Madden, pending payment of a check tendered to Madden's agent (automobile salesman Teel) by Herzog. The check was drawn by Simmons Motors with Madden designated payee. It covered the purchase price of the truck.

The facts are relatively simple. Defendant Ken Herzog wished to acquire a truck. He called on T. C. Simmons, Jr., d/b/a Simmons Motors (Packard Sales Service) at Brem-

[1]Reported in 257 P. (2d) 779.

erton.· At the time, Mr. Simmons had no truck suitable for Herzog's particular needs. Herzog expressed the desire to look for a suitable truck in Seattle, with the understanding that its purchase would be financed by Mr. Simmons. Shortly thereafter, Herzog went to the University Motors in Seattle, and talked with salesmen Roland Hyatt and Ward Teel. The University Motors had no trucks suitable for Mr. Herzog's purposes.

Mr. Teel suggested that his brother-in-law, Paul Madden, had a truck for sale for $1,250, which might be suitable, but that the sale would have to be made on the basis of cash or a certified check. Herzog inquired whether University Motors would finance the deal. He was advised that they would finance only seven or eight hundred dollars of the amount required. After talking with Mr. Madden, the price of the truck was reduced to $1,225. Herzog was allowed to drive the truck to Bremerton and to keep it over the week end. There, he worked out arrangements with Mr. Simmons to finance the purchase of the truck.

Herzog returned to Seattle on the following Monday or Tuesday with a check, drawn on the Simmons Motors, payable to Paul Madden, which was turned over to Mr. Teel, the salesman at University Motors. The certificate of title to the truck, endorsed in blank, was turned over to Mr. Herzog. He returned to Bremerton and delivered the certificate of title to Mr. Simmons. A conditional sales contract was executed between Simmons Motors, as vendor, and Herzog, as vendee. Herzog retained possession of the truck. Simmons sold and assigned the conditional sales contract to the National Bank of Washington.

Several days later, Mr. Teel turned the check over to Paul Madden, who deposited it in his bank a couple of days later. In due course, the check was returned to Madden, marked unpaid because of insufficient funds in the account of drawer. Thereafter, Madden telephoned the Simmons Motors. He was told there had been a mix-up of some kind, and it was suggested that the check be deposited again. Madden redeposited the check, and again it was returned

unpaid because of insufficient funds. Madden then called at the bank. He claims that someone at the bank advised him to sit tight for a few days and the matter would be worked out. He did so, but the check was never paid. After Simmons Motors went into bankruptcy, Madden sued Herzog for the purchase price of the truck.

Madden's basic contentions in the trial court and here on appeal are: (a) That the truck was sold to Herzog, not to Simmons Motors; (b) that it was understood title to the truck would not pass until the check was cleared.

Herzog contends to the contrary.

The trial court's findings, in part, were as follows:

"II. That on or about April 10, 1951, this defendant, Ken Herzog, acting as the agent of T. C. Simmons and Eleanor V. Simmons, his wife, took possession of one 1949 Studebaker Truck, the property of the plaintiff, in Seattle, Washington, and upon taking possession of the same tendered and delivered to the plaintiff the check of T. C. Simmons drawn on the Bremerton Branch of the National Bank of Washington, in the sum of $1225.00, which check was accepted by the said plaintiff as payment for said truck. That at said time and place the said plaintiff delivered to the defendant, Ken Herzog, the title certificate to said truck, which the plaintiff had endorsed in blank, without naming the transferee therein. That this defendant took said truck and said title certificate to the City of Bremerton, Washington, where he delivered the title certificate to the defendant, T. C. Simmons and retained possession of the truck.

"III. That thereafter the defendant, T. C. Simmons, executed a conditional sale contract for the purchase of said truck by the defendant, Ken Herzog, and at all times after the execution of said contract the defendant, Ken Herzog, was lawfully in possession of said truck as a contract purchaser thereof, and said contract has never been cancelled, revoked or forfeited. That said contract has been assigned by the said Simmons to the defendant, National Bank of Washington, the owner and holder thereof.

"IV. That the aforesaid check in the sum of $1225.00 made payable to the plaintiff and issued by T. C. Simmons, has not been paid for the reason that the said T. C. Simmons had insufficient funds in the bank upon which the same was drawn, for payment of the same."

On the basis of the above-quoted findings, the trial judge concluded that plaintiff's lawsuit should be dismissed. Judgment was entered accordingly. Madden has appealed.

Madden's assignments of error are as follows:

"1. The Court erred in finding that the truck was sold by Appellant Madden to Simmons rather than the Respondent Herzog.

"2. The Court erred in holding the title of the Respondent National Bank of Washington was superior to Appellant Madden's rights as an attaching creditor.

"3. The Court erred in holding the transaction between Simmons and Respondent Herzog was a conditional sales contract rather than a chattel mortgage.

"4. The Court erred in failing to enter judgment in favor of Appellant against Respondent Herzog for the purchase price of the truck and a judgment against the Respondent bank determining its rights to be inferior to those of Appellant."

The testimony is conflicting as to (a) whether the truck was sold to Simmons or to Herzog, and (b) whether title passed when the check was received by Teel. Herzog testified that the understanding between him and Simmons was that the truck would be purchased by Simmons and sold to Herzog on a conditional sales contract. His testimony was to the effect that the University Motors would not finance the deal with him; that it was necessary for him to make the financing arrangements with Simmons; that, at all times, Teel insisted the sale had to be on the basis of cash, or a certified check; that, on being tendered the check of Simmons Motors, Teel remarked that it was a check of the Packard-Simmons Motors, and that no more was said about a cash deal or a certified check; that nothing was said about reservation of title until the check cleared the bank.

We think the trial court's memorandum opinion is significant. It reads, in part, as follows:

"I have examined the briefs in this case, but I am convinced the case is solely one of fact and I think the facts, relieved of all the frills, are these:

"Herzog wanted to buy a truck. Simmons Motors is an automobile concern (and I don't know what the facts are in Seattle but automobile dealers in Bremerton are not in

any sense engaged in the loan business). In any event, he didn't go there to obtain a loan. He went to buy a truck. Simmons didn't have any truck that was satisfactory so he told Herzog to, 'Go and see if you can find a truck and I will finance it or purchase it for you.' What he meant—what everybody understood he meant was, 'You find something that you want—something that suits you. I will buy it and resell it to you on a conditional sales contract.' . . . So Herzog goes and finds a truck by and through another auto-mobile agency. He, naturally, asks the question, would they finance the deal for him? What he meant was, would they sell him the truck on a conditional sales contract? They wouldn't do it. (That is, on satisfactory terms) So he goes back to Simmons and says, 'I have found a truck. It will cost $1225.' Simmons says, 'Is it satisfactory to you?' 'Yes.' 'Okay, here is a check for $1225, made payable to the owner of the truck.' (It was Simmons' check, not Herzog's) 'You deliver the check and get the truck and the title thereto and bring it back to me and I will take care of the deal.' That is exactly what was done except that the truck wasn't physi-cally brought back, (it being already in Herzog's possession) but all the title papers (indicia of title) were brought back to the purchaser of the truck, The Simmons Motors. . . .

" . . . We can cite little answers to questions and statements by witnesses that may throw us off the track, but that is exactly what happened. The truck was sold to the Simmons Motor Company. The owner or the owner's agent knew he was selling to the Simmons Motor Company. The Simmons Motor Company is the only firm from which they received any consideration, whatever, for the truck. The title papers were delivered to Herzog to take to the Simmons Motor Company and there close his deal with them. The check was a check of what appeared to be a repu-table automobile agency. In any event, that is the way the seller looked at it, and he says, 'Give me the check and here are all the evidences of title to the truck.' Therefore, defi-nitely, the title passed to the Simmons Motor Company and the check was accepted in full payment, otherwise, if they had any possible doubt, why in the world didn't they go to the telephone and phone the bank over in Bremerton and find out if the check was good? . . ."

■ We cannot see that this case is different from others where, on conflicting evidence, the trial court has entered findings, has arrived at legal conclusions consistent with the

findings, and has entered its judgment accordingly. As we have said many times before, the trial judge had the witnesses before him. He was in a better position than are we to pass upon the veracity of their testimony. In this case, he apparently relied upon Herzog's testimony and discounted that of Madden's witnesses. We do not think the evidence preponderates against the findings, and they will not be disturbed. If there was any doubt in our minds in this respect, it seems to us it would be resolved in favor of respondents because, if for no other reason, Madden endorsed the truck certificate of title in blank, put it in the hands of his agent Teel, and allowed him to give possession of the document of title to Herzog—whereafter, the name of Herzog, Simmons, or any other person, could have been inserted as the ostensible title owner of the truck.

We find no merit in appellant's assignments of error, and the judgment of the trial court is, in all respects, hereby affirmed.

SCHWELLENBACH, HILL, HAMLEY, and OLSON, JJ., concur.