[No. 32554.   Department Two.   October 22, 1953.]

CHARLES EDER, *Respondent*, v. ROBERT R. NELSON *et al.,*
*Appellants.*[1]

*Harley W. Allen,* for appellants.

*John T. Moran, John N. Leavitt,* and *R. E. Young,* for respondent.

DONWORTH, J.—This is an appeal from a judgment for plaintiff, as an alleged accommodation maker, in an action for reimbursement against the accommodated parties in whose behalf he had been required to pay the full amount of a promissory note to the holder thereof. At the conclusion of plaintiff's evidence in the first trial of this case, the trial court granted defendants' motion for an involuntary nonsuit. Thereafter, a motion for a new trial was filed by plaintiff and granted by the trial court. Defendants appealed from the order of the court granting the new trial.

[1]Reported in 262 P. (2d) 180.

This court affirmed the order of the trial court granting a new trial in *Eder v. Nelson,* 41 Wn. (2d) 58; 247 P. (2d) 230, wherein we held that, on the retrial of the case, plaintiff should be permitted to introduce evidence to show that he received no value for the promissory note itself and thus was only an accommodation maker within the meaning of § 29 of the uniform negotiable instrument law, RCW 62.01-.029, Rem. Rev. Stat., § 3420. We said:

"If, as respondent [plaintiff] sought to prove, the ten thousand dollars he received at the time the note was negotiated represented payment of Pratt's debt to him *and was not value received for the note itself,* then he would not be precluded from suing as an accommodation maker for reimbursement.

"Whether respondent received consideration for the note itself was, therefore, a material issue and one expressly tendered by the separate and further defense in appellant's answer."

At the second trial, plaintiff introduced evidence tending to establish that he had received no value for the note itself and was, therefore, only an accommodation maker. The trial court entered findings of fact and conclusions of law in his favor. From the judgment for plaintiff, defendants have appealed.

On this appeal, defendant husband will again be referred to as though he were the only appellant.

Respondent's evidence was substantially as follows: One Earl Pratt was conducting a livestock auction ring known as the Tonasket Auction Block. He was in some financial difficulty and had borrowed ten thousand dollars from respondent on a short-term basis until he could obtain financing from some other source. This loan was evidenced by respondent's check, payable to Pratt in that amount, dated December 8, 1947.

Pratt thereafter entered into negotiations with appellant concerning the formation of a partnership to operate the auction ring. Appellant was willing provided one R. L. Heaverlo, who was a cattle auctioneer, would also agree to become a partner. Pratt testified that he then informed

appellant of his debt to respondent and that he had to pay him back before he could proceed with the formation of the partnership. Appellant then agreed to put up the ten thousand dollars which was to be used to repay respondent. Pratt testified that the advance of the money to him was definitely a condition precedent to the formation of the partnership. Heaverlo testified by deposition that he knew that Pratt needed the money and that there would have been no use in forming the partnership if the money had not been made available for Pratt's use.

Respondent's evidence further tended to show that appellant visited the First National Bank of Tonasket a week or ten days prior to February 20, 1948, to arrange for a loan of ten thousand dollars. The bank president testified that appellant wanted the loan in connection with the Tonasket auction business. The cashier's testimony was that appellant wanted to advance the money to Pratt.

The bank refused to make the loan because appellant was already indebted to the bank in such amount that, if this loan were made, appellant's total indebtedness would have exceeded the statutory limit which the bank could legally loan to one person without security. There was no question as to appellant's financial standing being adequate to justify the proposed loan.

Appellant later met respondent in Spokane and asked him if he would cosign a note. He agreed to do so. Respondent testified that he received a telephone call from appellant on February 19, 1948, requesting him to be at the bank in Tonasket the next morning. When respondent arrived there, he was asked by appellant if he would still be willing to serve as a cosigner. He again consented, but the bank officers again explained that, because of the statutory limit on unsecured loans, it could not lend the money on a note signed by appellant as one of the principal debtors, although his financial standing was entirely satisfactory. It was, therefore, arranged at the suggestion of the bank officers that respondent (who had ample credit and was not then indebted to the bank) would sign as maker a note payable

to appellant's order, and that the latter would then endorse it and deliver it to the bank.

This arrangement was carried out. Both Pratt and respondent testified that he (Pratt) was present at the bank at that time and asked appellant to give the proceeds of the note directly to respondent. The loan transaction was completed about noon on February 20, 1948. Respondent and the bank cashier both testified that appellant directed the cashier to pay the proceeds directly to respondent. This was done by the issuance of a cashier's check, which was deposited to the credit of respondent's account in another bank.

Mr. Heaverlo testified that, when appellant came out of the bank, he stated: ". . . Charlie [respondent] was sure dumb. He was on the note for the whole works."

The bank president and the cashier, who were both present during the discussions regarding the transaction, testified that, as between the parties, it was agreed that appellant was to be primarily liable for the repayment of the loan to the bank. When the note matured, the bank several times contacted appellant demanding its payment, and only when he finally refused to pay did the bank look to respondent for payment. He ultimately paid the principal plus all accrued interest except a portion of the interest which had been paid by Pratt to the bank.

Approximately one hour after Pratt left the bank on the day in question, he met appellant in the auction yard. According to Pratt's testimony, appellant said: "Charlie [respondent] has his money . . . You have ten thousand dollars to sink or swim."

Sometime before one-thirty o'clock that afternoon, Pratt, Nelson, and Heaverlo went into the auction-yard office and signed an agreement making them partners in the operation of the auction business.

Appellant's account of the transaction differed sharply in several material particulars from that of the other witnesses who were at the bank on February 20, 1948. He testified that he made no phone call to respondent on the preceding day, but met him at the auction yard on the morning in question

and accompanied him to the bank, where arrangements were made to secure a bond for the auction business and complete other matters concerning the creation of the partnership. He testified that respondent then suggested that they loan some money to Pratt for his own use, and that it was later agreed that each should loan five thousand dollars to him secured by a mortgage on the auction-yard equipment. Appellant further testified that the bank cashier advised him that the bank could not make the loan. The cashier suggested having respondent sign the note as maker. Appellant said he signed it merely as an accommodation endorser and thought the money was to go to Pratt for his own use. He denied giving any directions to the bank as to the disposition of the proceeds of the note and did not find out until much later that respondent actually received the money. He further testified that neither Pratt nor respondent had discussed loaning any money to Pratt prior to the formation of the partnership, and that it definitely was not a condition precedent to its formation. No mortgage on the auction-yard equipment was ever made.

The law of this case was established on the first appeal. Appellant's twenty-two assignments of error are directed principally to the entry of certain findings of fact and conclusions of law and the refusal of the trial court to enter certain findings and conclusions proposed by appellant.

We do not deem it necessary to discuss individually each of the assignments of error. In substance, appellant argues that respondent had the burden of proving by a preponderance of the evidence that he received no value for the making of the note in question, that this burden was not met, and, therefore, there was insufficient evidence to support the findings of fact and the final judgment based thereon.

This case involves only issues of fact. This court, being an appellate court and not the trier of the facts, will not disturb the findings of the trial court unless the evidence preponderates against them. *Corbett v. Ticktin, ante* p. 248, 260 P. (2d) 895, and case cited.

Respondent's testimony, and that of the bank officials tended to prove that he received no value for the note itself

and signed it only to accommodate appellant, who wished to loan the money to Pratt in order that the latter might discharge his indebtedness to respondent. The trial court had the parties and witnesses before it on two separate occasions and chose to believe the testimony introduced by respondent rather than that produced by appellant.

After a careful examination of the record we cannot say that the evidence preponderates against the findings of the trial court. The findings were based upon substantial competent evidence and will not be disturbed. *Peterson v. Schoonover*, 42 Wn. (2d) 621, 257 P. (2d) 209; *Madden v. Herzog*, 42 Wn. (2d) 666, 257 P. (2d) 779.

The trial court, therefore, did not err in denying appellant's motion for new trial and in entering judgment for respondent.

The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and FINLEY, JJ., concur.